No. 39,191

Laurence Huerter, et al., *Appellants,* v. Charles Hassig, et al., *Appellees.*

(267 P. 2d 532)

Opinion filed March 6, 1954.

*Charles Rooney,* of Topeka, was on the briefs for the appellants.

*Harold R. Fatzer,* attorney general, *Paul E. Wilson,* assistant attorney general, and *Noel Mullendore,* special assistant attorney general, were on the briefs for the appellees.

The opinion of the court was delivered by

WEDELL, J.: This action was instituted by plaintiffs, landowners, whose farms are located in the vicinity of Lake Nemaha in Nemaha county, against members of the state forestry, fish and game commission, the headquarters of which is in Pratt county.

Plaintiffs sought a writ of mandamus to compel members of that commission and its director to remove an obstruction in the Nemaha river which the state constructed in the building of Lake Nemaha and which plaintiffs allege is damaging their lands.

The action was filed in the district court of Nemaha county and summons was served on the secretary of state. Plaintiffs appeal from an order quashing the service summons pursuant to the motion of defendants.

Appellees appeared specially and moved to quash the service on the ground it conferred no jurisdiction on that district court for the reason the proper venue of the action was in Pratt county. The sole question for review is one of venue.

One of the statutes on which appellants rely is G. S. 1949, 75-417, which reads:

"In any case in which the state is a judgment lien holder upon real property, or in any case involving real property on which the state claims a lien or any interest therein, an action may be brought in the district court in which the real property is situated against the state the same as against a private person: *Provided, however,* That the petition shall state the nature of the lien or interest claimed by the state. Upon the filing of such action in such court a summons shall issue out of such court directed to the sheriff of Shawnee county, Kansas, for service, and service thereof shall be made by delivering to the secretary of state personally a copy of such summons or by leaving a copy of such summons at the office of the secretary of state in Shawnee county, Kansas."

The statute is not applicable. It pertains to actions *in rem.* The state is not a lien holder and claims no lien on the land. No claimed interest in the land is involved in this action. It is conceded the state owns the land on which the lake and dam are located. The relief sought by appellants, if granted, would operate solely on the members of the commission. It is distinctly an action *in personam.*

Appellants also rely on the provisions of G. S. 1949, 75-418, the pertinent part of which reads:

"In any and all judicial proceedings wherein the state of Kansas or any board, commission, department or agency thereof, except the state highway commission, is a party in interest, service of summons or notice as required may be had and made upon said state or any board, commission, department or agency thereof by service of such process upon the secretary of state. If a summons be proper it may be issued by the court, referee or commission *having jurisdiction*, directed to the sheriff of Shawnee county, Kansas, and service of such summons shall be made by delivering to the secretary of state personally a copy of such summons or by leaving a copy of such summons at the office of the secretary of state in Shawnee county, Kansas. . . ." ( Our italics. )

Careful examination of this statute discloses it is not a venue enactment but pertains solely to service of process which may be issued only by a court, referee or commission *having jurisdiction*. The question of a court's jurisdiction, therefore, remains the point at issue and it depends on venue.

Appellants also cite a portion of G. S. 1949, 60-501, which reads:

"Actions for the following causes must be brought in the county in which the subject of the action is situated, except as provided in the next section: *First*—For the recovery of real property, or of any estate or interest therein, or for the determination in any form of any such right or interest, or to bar any defendant therefrom. . . ."

The portion of that statute relied on by appellants, as well as the remaining portion of that statute, clearly disclose it likewise pertains to actions concerning realty and is not applicable here.

Appellants argue the tax and corporation commissions are not governed by the same statutes as the instant commission and that our decisions involving the venue of appeals from their decisions are not controlling. They direct attention to G. S. 1949, 74-2414 relating to the tax commission. It provides:

"*The commission shall maintain its principal office in the city of Topeka* and the executive council shall provide suitable room or rooms for the use of said commission. The commission shall, subject to the approval of the governor, establish and maintain at other places within the state, branch offices for the administration of the tax and revenue laws and the collection of taxes, licenses and fees thereunder." ( Our italics. )

G. S. 1949, 74-606, relating to the corporation commission, reads:

"*The state corporation commission shall keep its office in the statehouse in the city of Topeka,* and the members thereof may act officially in any part of the state." ( Our italics. )

G. S. 1949, 74-3301, which creates the instant commission, provides:

"The headquarters of the forestry, fish and game commission shall be at the state fish hatchery at Pratt, Kan."

"Headquarters," according to Webster's New International Dictionary, 2nd ed., unabridged, means:

"1. The quarters or place of residence of any chief officer, as the general of an army, or head of a police force; the place from which orders are issued; hence, the center of authority; also, the personnel of headquarters.

"2. A chief or usual place of residence or business."

Appellants concede this court has held acts of the tax and corporation commissions are performed in Topeka and hence the venue of appeals from their orders is in Shawnee county. They argue that at least a part of the orders of the instant commission, which caused damage, were actually performed in Nemaha county and therefore under G. S. 1949, 60-503 the venue of the instant action is in that county. The portion of that statute relied on reads:

"Actions for the following causes must be brought in the county *where the cause, or some part thereof, arose:*

. . . . . . . . . . . .

"*Second.* An action against *a public officer for an act done by him* in virtue or under color of his office, or for neglect of his official duties. . . ." (Our italics.)

It is true the actual labor of constructing the dam and lake was performed in Nemaha county. This commission has authority to make orders involving its functions which are executed in every part of the state. The foregoing statutes pertaining to the tax and corporation commissions disclose they also may act in other counties than at the state capital in Shawnee county. If appellants' contention is sound the members of the instant commission may be compelled to respond to actions in every county of the state in which its orders are carried into effect, if any damage results where work is performed.

This brings us to the pivotal point in this appeal. It involves the proper interpretation of the legislative intent as disclosed in G. S. 1949, 60-503. As previously stated, appellants' contention is the venue of the instant action was properly laid in Nemaha county because a part of the work ordered to be done by the commission was performed in that county. It should be observed the statute does not pertain to physical labor performed in the execution of the commission's orders. It is a statute which determines in what county an action may be brought against "*a public officer* for an act *done by him.* . . ." (Our emphasis.) Appellants cite *State, ex*

*rel., v. Flannelly,* 96 Kan. 372, 152 Pac. 22. It supports appellees' rather than appellants' contention that the instant action should have been instituted in Pratt county where official action by the commission is taken.

In construing the statute in question it was there said:

"The evident purpose of the statute is to confine actions on account *of the conduct of officers* to the county or counties in which the *act or acts of the officers were done.* These views are supported by *Clay v. Hoysradt,* 8 Kan. 74, where this court said:

" 'The language of this section is plain, and needs no comment from us. By it proceedings against public officers for official acts are referred to the courts of the county where the acts are done. It is an expression of the purpose of the legislature *to localize suits against officers.* It relieves them from the necessity of deciding between the conflicting orders of courts of different counties. They are amenable only to the courts of the county in which *they are acting.'* " (p. 380, 381.) ( Our italics.)

Although in *Freund v. Commission of Revenue and Taxation,* 156 Kan. 109, 131 P. 2d 678, the appeal to this court involved the construction of various statutes in order to determine the venue of an appeal from orders of the state tax commission, the exact intent of G. S. 1949, 60-503 was again specifically determined and it was pointedly said:

"Under this statute the cause of action has been construed to arise in the county *where the official acts constituting the basis* of the action were performed.

"*Clay v. Hoysradt,* 8 Kan. 74; *Fay v. Edmiston,* 28 Kan. 105; *State, ex rel., v. Flannelly,* 96 Kan. 372, 152 Pac. 22; *Kansas City v. Utilities Commission,* 103 Kan. 473, 176 Pac. 324." (p. 112.)

Appellants also rely on *Smith v. Miller,* 147 Kan. 40, 75 P. 2d 273. That was "essentially an action for the determination of a right or interest in the land itself" and it is not in point.

We do not deem it necessary to review additional decisions which confirm the correctness of the order quashing the service of process in this case. The judgment of the district court was sound and it is affirmed.